UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL STEVEN KOBER,

     Plaintiff,

v.                                                              Civil Action No. _____

NATIONAL BOARD OF MEDICAL
EXAMINERS,

     Defendant.

### ORIGINAL COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL

**To the Honorable United States District Court Judge:**

Plaintiff, Michael Steven Kober ("Kober"), files his Original Complaint for Emergency Injunctive Relief and Demand for Jury Trial against Defendant, National Board of Medical Examiners ("NBME") and respectfully states the following.

### NATURE OF THE ACTION

1.    This is an action for emergency, preliminary and permanent injunctive relief, and for attorneys' fees and costs incurred in bringing this action based on NBME's refusal to provide reasonable accommodations to Kober pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq.  Kober is a medical student at the American University of the Caribbean School of Medicine ("AUCSM"), and is planning to take the U. S. Medical Licensing Examination ("USMLE") Step 1.  The NBME has illegally refused and is illegally refusing to accommodate Kober's learning disability by refusing to provide Kober additional time to take the USMLE Step 1.  Kober seeks a preliminary and permanent injunction prohibiting the NBME from continuing its violation of his ADA rights and compelling NBME to allow Kober to take

the examination with appropriate accommodations.  NBME's actions are in violation of the ADA, including 42 U.S.C. § 12189.

## PARTIES

2.     Kober has completed the second year of instruction at AUCSM.  Kober, who has been diagnosed with a learning disability, plans to take the USMLE Step 1.  Kober's' learning disability impairs his reading ability to the point that his competence level is below that expected in comparison to most people and is a disability within the meaning of the ADA. 42 USC §12102(2).

3.     NBME is a District of Columbia non-profit organization headquartered in Philadelphia, Pennsylvania.  NBME administers the USMLE, a three-step examination, the successful completion of which is required for medical licensure in the United States.  Additionally, the level of performance on the USMLE is a primary determinant of the quality of institution for which a candidate will be accepted for residency training.  Defendant has previously administered and will administer the USMLE Step 1 Exam within the boundaries of this judicial district in Louisiana.

4.     NBME engages in business in Louisiana and this judicial district and this action arises from those business activities.  Kober, in fact, plans to take the Step 1 Exam in Shreveport, Louisiana.  NBME, however, does not maintain a regular place of business in this state or this judicial district and does not have a designated agent for services of process in this state.  Accordingly, under Louisiana statute RS 13-3204, NBME may be served by sending a certified copy of the summons and this complaint by certified mail to NBME's registered agent: CT Corporation System 1025 Vermont Ave., N.W., Washington, D.C. 20005.

## SUBJECT MATTER JURISDICTION AND VENUE

5.     This action arises under the laws of the United States, specifically the ADA, and accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331.  This Court also has jurisdiction pursuant to 42 U.S.C. §12188(a)(1), which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person who is being subjected to discrimination on the basis of disability in violation of Title III of the ADA.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, as NBME is doing business in this judicial district by virtue of administering the USMLE Step 1 in this district, and is denying Kober the rights he is afforded under the ADA in this judicial district.

## FACTUAL ALLEGATIONS

7.     Kober has completed his second year of instruction at AUCSM. As part of his preparation for the third year of medical school, Kober is required to take the USMLE Step 1 Exam.  He has taken this exam on three separate occasions but has been unable to complete the exam in the time allowed.  In fact, of the 336 questions on the test, as many as 50 were left unanswered because Kober did not have enough time to finish the exam.  Despite this fact, Kober came very close to passing the exam.  Because of his learning disabilities, described below, Kober has requested that under the ADA USMLE provide him with additional time to take the exam.  These requests have been denied.  As a result, Kober has been forced to take a leave of absence from AUCSM while he pursues his legal rights under the ADA.

8.     The specific learning disabilities afflicting Kober include Attention-Deficit Hyperactivity Disorder, Anxiety Disorder and Dyslexia.  Although not clinically diagnosed until Kober was nineteen, evidence of these learning disabilities has been manifested throughout Kober's academic studies, beginning when Kober was in kindergarten.

9.      **KINDERGARTEN THROUGH FOURTH GRADE:** Kober's learning disabilities began to manifest themselves at an early age.  From kindergarten through third grade, Kober attended a small private school where he struggled academically.  Kober was constantly reprimanded for his daydreaming and inattentiveness.  While he was in the third grade, Kober took the SRA Survey of Basic Skills that compares a child's academic progress in various subject matters with that of other children throughout the country.  Kober's scores ranked him in the 27th percentile nationally for reading and in the 39th percentile for language, meaning that 73% and 61% of the students taking the test outperformed Kober.

10.      Because of Kober's struggles in school, his parents transferred him a public school where they thought more resources would be available.  When his problems in school persisted, his parents requested that Kober be evaluated.  Kober's parents assumed he was being evaluated for learning disabilities; instead, however, Kober was tested in order to determine whether he should be placed into a Special Education Program.  In other words, the school was testing for low intelligence, not learning disabilities.  Not surprisingly, when the assessment was finished, Kober was not recommended for placement into the Special Education Program.  The observations made during the assessment were telling.  For instance, it was noted that Kober was inattentive and often daydreamed.  His grades in reading and language were mostly C's and D's. It was noted that his parents reported that Kober knew the material when he was at home, but could not reproduce the same results on a written test.  It was also noted that Kober was easily distracted and that his attention was not on his assignments.  Moreover, even though Kober was not placed into the Special Education Program, it was recommended that special concessions be allowed for him in the areas of spelling and written expression.  Because Kober's parents were misinformed about the nature and type of testing that was being done, and based on the verbal

results given to them, they did not seek further diagnostic testing for learning disabilities at this time, as they thought that this was included in the assessment that had been done.

11.     **FIFTH GRADE THROUGH HIGH SCHOOL:**     Kober's continued inattentiveness and poor performance at school led his parents to seek the smaller classroom environment.  Through a small private school classroom, together with private tutoring and programs at the Sylvan Learning Center, Kober was able to make some adjustments that led to minor improvements in his academic progress from fifth grade through high school.

12.     **TWELFTH GRADE AND THE ACT EXAM:**     During his senior year, Kober sat for the ACT Exam several times under normal time constraints, and received low scores each time.  His composite scores on the ACT Exam ranged from 16-18.  A score of 16 meant that 81% of the students taking the test scored at or above Kober's score.  Likewise a score of 18 meant that 67% of the students taking the test scored at or above Kober's score.  Moreover, each time Kober took the ACT Exam, he was unable to finish the test.

13.     **COLLEGE AND THE MCAT EXAM:**  After high school, Kober continued his studies at Louisiana State University ("LSU").  Once at college, and faced with the large lecture setting, Kober's learning disabilities manifested themselves again.  He had a difficult time keeping focus and paying attention during the long lectures.  Puzzled by the continuing problems at LSU, the Kober family sought the assistance of a clinical psychologist.

14.     Kober was evaluated by David S. Post, Ph.D. for complications related to his academic stresses.  This occurred during Kober's second year at LSU.  The battery of tests Dr. Post administered is set forth in his attached Consult Note dated March 13, 2000.  Kober's Achievement scores revealed no problems with Broad Reading and Broad Math, and only mild problems with Broad Written Language.  His cognitive abilities scores revealed no problems

with Auditory Processing or Visual Processing.  Kober's CPT scores, however, demonstrated significant problems with several aspects of attention, including the inability to sustain attention, impulsive responding and difficulty inhibiting responses, and impaired arousal levels.  Based on these tests, Dr. Post concluded that Kober suffered from Attention-Deficit Disorder, Inattentive Type and Anxiety Disorder NOS.  Dr. Post placed Kober on medications and recommended that Kober receive academic accommodations at LSU for his attention disorder.  As a result of Kober's documented learning disabilities, LSU granted Kober the following accommodations: time and a half on in class assignments and exams; and a distraction reduced environment

15.  **THE MCAT:** After this diagnosis, Kober was treated for ADHD by Dr. Kaufman, a neurologist from Baton Rouge.  Once Kober was diagnosed and placed on medication, and once he received the accommodations from LSU, Kober's GPA improved from 2.6 to 3.7.  It was around this time that Kober began preparing for the MCAT Exam so that he could go to medical school.  Both Dr. Post and Dr. Kaufman recommended that Kober receive accommodations when taking the MCAT Exam.  Dr. Post specifically recommended that Kober receive twice the standard time and that he take the test in a separate room.  These accommodations were granted.

16.  **AUCSM.**   Following his undergraduate studies, Kober sought admission at the American University of the Caribbean School of Medicine ("AUCSM"), where he has successfully completed his second year and anticipates commencing his third year following the Step 1 Exam.  Throughout his two years of medical school, Kober requested and was granted accommodations when taking exams.  Specifically, he was granted additional time to complete tests.

17. **USMLE Step 1/THE FIRST REQUEST FOR ACCOMMODATION:** After completing his second year of medical school, Kober prepared to take the Step 1 Exam administered by NBME.  This was in 2008.  In anticipation of the Step 1 Exam., Kober wrote to the NBME requesting additional time to take the exam.  In support of his request, Kober advised NBME that he was given formal accommodations of extra time on exams by (1) Louisiana State University; (2) the Association of American Medical Colleges (the not-for-profit organization that administers the MCAT); and (3) the American University of the Caribbean School of Medicine.  Kober also advised NBME that he had been diagnosed with ADHD, an anxiety disorder and dyslexia.  Kober also enclosed two reports from Dr. Post dated March 13, 2000 and August 27, 2003.  Likewise, Kober enclosed a report from Dr. P. Keith Nabours, a licensed psychiatrist.

18. **NBME'S FIRST RESPONSE:**  On July 16, 2008, NBME wrote to Kober and advised him that the information he had submitted was incomplete and asked him to submit documentation demonstrating that he is substantially limited in one or more major life activities.  Kober was also instructed to submit documentation proving the extent to which he meets the diagnostic criteria of DSM-IV-TR.  Lastly, Kober was told to submit "objective records to document the chronic course and current impact of your reported difficulties, such as college, medical school, and other post-secondary records and transcripts and all scores for nationally standardized tests taken."

19. **THE 2008 AND 2009 STEP 1 EXAMS:**  Because of NBME's resistance, Kober took the Step 1 Exam in both July 2008 and February 2009.  Kober was unable to complete either exam in the time allowed.  In fact, of the 336 questions on the test, as many as 50

were left unanswered because Kober did not have enough time to finish the exam.  Despite this

fact, Kober came very close to passing both exams.

20.     **USMLE Step 1/THE SECOND REQUEST FOR ACCOMMODATION:  I**n

2009, Kober submitted his second request for the accommodation of additional time on the Step

1 Exam.  As before, the NBME requested that Kober supply it with additional information.

Kober did so on May 27, 2009 by providing the NBME with a report from Dr. Patricia Post, a

clinical psychologist.  This report states that a diagnostic interview and evaluation of Kober took

place over two days in May 2009.  The test administered was the Nelson-Denny Reading test.

His test scores on this test reflect poor performance in reading (2nd percentile), vocabulary (4th

percentile) and comprehension (2nd percentile).  Overall, Kober placed in the second percentile,

meaning that 98% of those taking the test did better than Kober.  This part of the Nelson-Denny

test is a timed test.  On vocabulary, he was only able to complete 42 of the 80 questions; on

reading comprehension, he was only able to complete 18 of the 38 questions.  In the untimed

Gray Oral Reading Test, Kober fared much better, ranking in the 37th percentile.     The results

from this test were also given to the NBME.  This material was in addition to the material

supplied to the NBME in 2008, material that included the reports from Dr. David Post and Dr.

Nabours.  As with the other reports, the report of Dr. Patricia Post noted that Kober suffered

from ADHD and dyslexia.  She concluded that Kober was qualified for accommodations and

should receive double time when taking timed tests.

21.     **NBME'S SECOND RESPONSE:**  On June 24, 2009, NBME again denied

Kober the accommodation of extra time, claiming that the information Kober submitted was

incomplete.  Similar to before, the NBME stated that accommodations are only available to

individuals who are 'substantially limited in a major life activity.  The NBME made this decision

without ever having met, tested or evaluated Kober.  Based on recent changes to the ADA, Kober requested that the NBME reconsider its decision.  In a letter dated July 30, 2009, the NBME stated that it would do so.  Thus far, there has not been any word from the NBME that it will in fact accommodate Kober because of his documented learning disabilities.

22.     **SUMMARY OF "HANDS-ON," "EYE-TO-EYE" PROFESSIONALS, TESTS AND RESULTS:**[1]  For the past nine years, Kober has been evaluated by numerous professionals, including medical doctors, psychiatrists and psychologists.  These professionals have all come to the same conclusion – that is, that Kober has learning disabilities and should receive accommodations under the ADA.  As a result of their diagnoses, LSU, the MCAT Exam and AUCSM afforded Kober the accommodations his learning disabilities required.  The specific professionals evaluating Kober are Dr. Charles Kaufman, a neurologist and a Fellow in the American Academy of Neurology (2002); Dr. Keith Nabors, a psychiatrist (2008); Dr. David Post, a licensed psychologist with certifications in Clinical Psychology and Clinical Neurology (2000-2003); and Dr. Patricia Post, a clinical psychologist (2009).

23.     The actual tests that these doctors administered to Kober include: (1) the Bender Visual-Motor Test; (2) Connors' Continuous Performance Test; (3) Wechsler Adult Intelligence Test, Third Edition; (4) Woodcock-Johnson Tests of Achievement, Revised; (5) Woodcock-Johnson Tests of Cognitive Ability; and (6) the Nelson-Denny Reading Test.  Moreover, these doctors also interviewed Kober and his family members, reviewed his school records and observed him while he was being tested.  It is absolutely critical to note that all of the foregoing diagnostic tests and evaluations were personally administered by licensed professionals.  In other

---

[1] Before granting a time accommodation on the STEP 1 Exam, NBME requires a learning disorder diagnosis and a current (less than three years old) assessment of an applicant's learning disability.  The Woodcock Johnson III battery of tests is accepted by the board for this assessment and a DSM-IV diagnosis is what is required. Dr. Post made the following DSM-IV diagnoses: 314.00 ADHD, Predominantly Inattentive Type.

words, the diagnoses and evaluations were done by professionals who personally, hands-on, eye-to-eye, met with, observed, and tested Kober.

24.     The foregoing myriad of diagnostic tests and evaluations resulted in Kober meeting the DSM-IV criteria for the following diagnosis: Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type (DSMI-IV 314.00).  He was also diagnosed Anxiety Disorder NOS and with dyslexia.

25.     Moreover, dating as far back as the early 1990's when Kober was in elementary school, a team of professionals including Educational Assessment Teachers, School Psychologists, School Social Workers and Speech/Language Evaluators assessed Kober as having difficulty in both reading and writing.  Likewise, it was observed by these professionals that Kober struggled with paying attention, that he often daydreamed, that he required structure and that he had problems in staying on task.  All of these observations are consistent with the type of learning disabilities with which Kober was later diagnosed.  Indeed, professionals and diagnosticians over the past several years have diagnosed, and continue to diagnose, Kober with a learning disability that comports with the criteria of the DSM-IV.

26.     Specifically, and covering the years from his fourth grade in school through the present, Kober psychologists, diagnosticians, and other learning disability specialists have consistently noted, among other things:

- Kober often fails to give close attention to details and makes careless errors in schoolwork and on academic tests.

- Kober has difficulty in sustaining attention in tasks.  He loses attention and focus during class lectures and on testing, despite a high level of motivation and resolve to improve.

- Kober often does not appear to listen when talked to, causing him to miss critical information regarding test instructions and assignments in class.

- Kober often does not follow through on instructions and fails to finish schoolwork, despite the intention and effort to do so.

- Kober has difficulty organizing tasks and activities, despite expending much time and effort.

- Kober is easily distracted by extraneous stimuli, despite a high level of motivation and effort.

- Kober has a history of impulsive responses to tests with increased errors and a history of becoming easily frustrated.

- Kober should receive formal accommodations on timed tests of up to twice the standard time.

- Kober should be tested in a separate room.

- Kober has a disability as defined by the ADA and thus should receive appropriate accommodations.

27.    IN SPITE OF NEVER HAVING MET KOBER, NEVER HAVING TESTED KOBER AND NEVER HAVING EVALUATED KOBER, NMBE IGNORES MULTIPLE QUALIFIED PROFESSIONALS, YEARS OF TESTS AND EVALUATIONS, YEARS OF OBSEVATIONS AND, PERHAPS MOST IMPORTANTLY, THE OBJECTIVE AND UNASSAILALBE HISTORY OF KOBER'S DISABLITY MANEFESTING WHEN TESTED WHERE READING WAS SUBSTANTIAL AND TIME WAS CONSTRAINED.

28.    Students at the AUCSM (as in many medical schools in the United States) are requested to take and pass the USMLE Step 1 before starting the third year of medical school. The third year of school consists of "rotations," i.e., medical education through the practical application of the principles learned in the classroom.  AUCSM requests Step 1 be taken before the third year begins to avoid interfering with the third year studies.  Passing the Step 1 is a prerequisite to completing the third year, obtaining residency admission, and being able to sit for the Step 2 and 3 examinations.

**Original Complaint for Emergency Injunctive**
**Relief and Demand for Jury Trial - Page 11**

29.     The NBME develops and administers the USMLE Step 1 at various test sites and on various dates throughout the United States.  The results of each student's scores are reported to that student's medical school.

30.     The NBME recognizes the right of disabled persons to accommodations by providing an application on which examinees can request test accommodations for the USMLE Step 1 Exam, including accommodations for learning disabilities like those suffered by Kober.

31.     Kober has previously taken the USMLE Step 1 Exam and came very close to passing, despite leaving as many as 50 of the 336 questions unanswered.  Kober is presently registered to take this Exam and plans on taking it in Shreveport, Louisiana.  NBME has denied Kober's requests for reasonable accommodations.  Due to NBME's strict and unyielding rules, if Kober is not allowed to take the Step 1 Exam with reasonable accommodations, it may very well be impossible for him to finish medical school.

32.     The facts establish that Kober has definite learning disabilities that substantially limit his major life activities of learning, reading and writing as compared to most people.  Under the ADA, Kober is entitled to a reasonable accommodation of additional time to take the USMLE Step 1 exam.  NBME's refusal to provide Kober with an accommodation of extra time for the USMLE Step 1, despite knowing of Kober's' documented learning disabilities that are protected under the ADA, is a violation of Kober's' rights under the ADA.

33.     Kober will be unable to complete his medical school education in the same manner as his classmates if he does not successfully complete the USMLE Step 1 Exam.  Moreover, he will be placed at a distinct disadvantage of competing for quality residency positions if he must take the exam without accommodation for his disability.  In the worst case

scenario, Kober's medical career and dream could end if he is unable to pass the USMLE Step 1, due to NBME's refusal to accommodate his disability as required by the ADA.

## COUNT I — VIOLATION OF THE ADA; REQUEST FOR INJUNCTIVE RELIEF

34.    Kober incorporates by reference the foregoing paragraphs.

35.    Kober is an individual with a disability as defined by the ADA because he has a mental impairment that substantially limits one or more of his major life functions, namely, learning disabilities that substantially limit his major life functions of learning, reading, and writing.  42 U.S.C. §12102(2)(A).

36.    Title III of the ADA (46. U.S.C. § 12189) prohibits discrimination against persons with disabilities in professional examinations such as the USMLE Step 1 as follows:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

37.    The NBME is covered by the ADA pursuant to 42 U.S.C. §12189 in its capacity as the administrator of the USMLE Step 1.

38.    Pursuant to 28 C.F.R. § 36.309(b), the NBME must assure that any examination

> is selected and administered so as to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factors the examination purports to measure, other than reflecting the individual's impaired sensory, manual, or speaking skills.

39.    One reasonable accommodation for a disabled person, such as Kober, that may be allowed under the ADA is lengthening the time permitted for completing the examination.

40.     Kober has a learning disability that substantially limits his major life activities of learning, reading and writing.  Kober's' condition, which has been diagnosed through testing, examination and evaluation by experts in this field, constitutes a disability within the meaning of the ADA.

41.     Under the ADA, a disability is defined, in part, as a physical or mental impairment that substantially limits one or more major life activities of an individual. 42 U.S.C. § 12102(2).   Under the authority of 42 U.S.C. § 12134, the Department of Justice has promulgated regulations (28 CFR § 35.104) that include "learning" and "work" within the definition of major life activities.  The major life activity of learning also includes "reading" and "writing" as activities protected by the ADA.  The "substantially limited" standard for the major life activity of learning, reading, or writing, is established when "the individual's important life activities are restricted as to the condition, manner, or duration under which they can be performed in comparison to most people."  28 CFR, pt. 36, App. B.

42.     As noted above, Kober has a learning disability that substantially impairs his ability to read and process the written word.  His disability precludes him from learning, reading and writing in the same manner and in the same amount of time as most people.  This learning disability substantially limits his activity of learning, reading, and writing, in comparison to most people and certainly in comparison to his peers, other medical students taking the USMLE.

43.     Failure in the taking of the USMLE necessarily precludes an individual from employment as a medical doctor in the United States.  Successful passing of the USMLE is a prerequisite to licensure to practice medicine in the United States, and the level of performance in the taking of the USMLE is a primary determinant of a candidate's job opportunities for residency.  Thus, Kober's entire future livelihood as a medical doctor rests on this exam.

44.     Kober made formal written request of NBME for reasonable accommodation for his disability in connection with taking the USMLE Step 1 Exam, i.e., two times the standard time to take the exam, an accommodation NBME has made to some people who have requested the accommodation.  Such accommodations are consistent with the reasonable accommodations he was provided in his undergraduate studies at LSU, on the MCAT Exam for entry into medical school, and the formal accommodations he received at his medical school, AUCSM.  The NBME has granted similar accommodations to other candidates in the past taking the Step 1 exam.

45.     The NBME's refusal to provide the reasonable test accommodations Kober requested for the USMLE Step 1 constitutes an illegal failure to accommodate a disabled person in violation of the ADA.

46.     Kober will be irreparably harmed if the NBME continues its illegal refusal to provide him the reasonable test accommodation as requested and unless this Court grants preliminary injunctive relief prohibiting the continued violation of Kober's ADA rights and compelling the NBME to provide the requested accommodation, in that (a) Kober's' medical school career will be placed on hold because a passing score on the USMLE Step 1 is a prerequisite to continuing his medical school education; (b) given his history with prior examinations, including the Step 1 Exam, Kober is justifiably concerned that he will not pass the USMLE Step 1 without the additional extra time accommodation to which he is entitled under the ADA; (c) Kober's' opportunity to engage in his career of choice is effectively on hold until the NBME is compelled to comply with the ADA; (d) Kober will be unable to continue the same pace of his medical school career as his peers if he is unable to pass the USMLE Step 1 at this time; (e) requiring Kober to take the USMLE Step 1 without accommodation puts him at distinct disadvantage given his disability; (f) reduced performance on the USMLE Step 1 as a result of

not receiving accommodation significantly reduces Kober's' future residency and professional career options; and (g) Kober faces a future expulsion proceeding under AUCSM's policy if he takes and fails to pass the USMLE Step 1 in a timely manner.

47.     The NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

48.     The public interest will be served by granting the requested injunctive relief.  The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with equal opportunities to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Kober with the ADA accommodations to which he is justly entitled.

49.     As a result of the NBME's violation of the ADA, Kober suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

50.     The NBME in denying Kober's' for reasonable accommodation violated the ADA and has done so while acting maliciously or with reckless indifference for Kober's' ADA rights.

51.     Accordingly, under the ADA, Kober is entitled to and hereby requests entry of a preliminary injunction directing the NBME immediately to cease and desist from its refusal to accommodate Kober's' requests for accommodation on the USMLE Step 1 and ordering that the NBME immediately comply with the ADA by allowing Kober the requested accommodation of two times the standard time to take the USMLE Step 1.

52.     Further, Kober is entitled to and hereby requests that the Court enter a permanent injunction directing that NBME immediately to cease and desist its refusal to accommodate Kober's' request for an accommodation on the USMLE Step 1 and any future USMLE Step

examinations to be taken by Kober and that the NBME comply with the ADA by providing Kober's' requested accommodation with regard to the USMLE Step 1 and future USMLE examinations for which Kober is otherwise entitled to sit and for which he otherwise makes proper application.

## COUNT II - REQUEST FOR ATTORNEY'S FEES

53.    Kober incorporates by reference the foregoing paragraphs.

54.    42 U.S.C. § 12188(a)(1), incorporates into Title III of the ADA the remedies and procedures set forth in 42 U.S.C. § 2000a-3(a) including the right to recovery of reasonable attorney's fees, and costs and expenses incurred in bringing this claim under the ADA.  Kober is entitled to recovery and, hereby, does request recovery of all reasonable attorneys' fees, costs, and expenses incurred in the bringing and prosecution of this action.

## JURY DEMAND

55.    Kober hereby demands a trial by jury for all issues in this case that may be triable by a jury of his peers.

WHEREFORE, PREMISES CONSIDERED, Kober requests that this Court grant judgment in his favor and against NBME as follows:

a.    enter a preliminary injunction directing that the NBME immediately cease and desist from its refusal to accommodate Kober's' request for reasonable accommodations on the USMLE Step 1 examination and ordering that the NBME immediately comply with the ADA by allowing Kober the requested accommodation of two times the standard time in which to take the USMLE Step 1 examination;

b.    order NBME to appear on the date and time affixed by this Court to show cause, if any there be, why a preliminary injunction as prayed for above, should not be issued;

c.      enter judgment in the form of a permanent injunctive order against NBME directing NBME to immediately cease and desist from its refusal to accommodate Kober's' request for accommodation on the USMLE Step 1 examination and any future USMLE Step examinations for which Kober is otherwise entitled to sit and for which he has made proper application and ordering NBME to comply with the ADA by allowing Kober the requested accommodation of two times the standard time to take any of the USMLE Step examinations;

d.      enter judgment against NBME awarding such compensatory damages as may be proven by Kober and to which he is entitled;

e.      enter judgment against the NBME awarding Kober recovery of his reasonable attorneys' fees, costs and expenses incurred in bringing and prosecuting this litigation; and

f.      awarding such other and further relief as may be appropriate, in law or in equity, to which Kober may otherwise by entitled.

Respectfully submitted,

KITCHENS, BENTON, KITCHENS & BLACK

By:___ s/ Clinton C. Black_____

Clinton C. Black (TA)
Bar Roll # 26604
2122 Airline Drive, Suite 200
Bossier City, Louisiana 71111
Telephone:     (318) 747-9636
Facsimile:     (318) 747-7679


Vincent E. Nowak, SBOT# 15121550
Robert R. Bell, SBOT# 00787062
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P.O. Box 31656
Amarillo, Texas  79120-1656
806.372.5050
806.371.6230 (Fax)


*Attorneys for Plaintiff*

## <u>VERIFICATION</u>

STATE OF LOUISIANA    §
                                 §

BOSSIER PARISH        §

BEFORE ME, the undersigned notary public, on this day personally appeared Michael Steven Kober, who, after being duly sworn, stated under oath that he the plaintiff in this action, that he has read Plaintiff's Original Complaint for Emergency Injunction Relief and Demand for Jury Trial, and that every factual statement contained in the complaint is within his personal knowledge and is true and correct.

 

_____
                                   Michael Steven Kober

SUBSCRIBED AND SWORN to before me on this the _____ day of October 2009.

 

_____
Notary Public, State of Louisiana