UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| MICHAEL STEVEN KOBER | CIVIL ACTION NO. 09-1772 |
| VERSUS | JUDGE STAGG |
| NATIONAL BOARD OF MEDICAL EXAMINERS | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS**

COOK, YANCEY, KING & GALLOWAY
A Professional Law Corporation
John T. Kalmbach #24484
333 Texas Street, Suite 1700
P. O. Box 22260
Shreveport, LA 71120-2260

ATTORNEYS FOR NATIONAL
BOARD OF MEDICAL EXAMINER

- i -

# **TABLE OF CONTENTS**

A.   TABLE OF CONTENTS ................................................................................................... i

B.   TABLE OF AUTHORITIES ..................................................................................... ii, iii

C.   INTRODUCTION ........................................................................................................... 1

      I.   NBME And The United States Medical Licensing Examination ........................... 1

      II.  Mr. Kober And His Alleged Disability .................................................................. 2

      III. The ADA's Applicability to Testing Organizations ............................................... 2

      IV.  Mr. Kober's Requests For Testing Accommodations ............................................ 7

D.   ARGUMENT ................................................................................................................... 9

      I.   Applicable Legal Standard Under Rule 12(b)(1) .................................................... 9

      II.  The Court Lacks Subject Matter Jurisdiction To Decide
          Mr. Kober's Premature Claims ............................................................................... 9

E.   CONCLUSION .............................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*Auerbach v. Bd. of Educ.*, 136 F.3d 104, 108-09 (2d. Cir. 1998) .................................................. 10

*Baer v. Nat'l Bd. of Medical Examiners,* 392 F. Supp. 2d 42, 46 (D. Mass. 2005) ........................ 4

*Blanks v. Register*, 493 F.2d 697, 699-700 (4th Cir. 1974) ........................................................... 10

*Carmichael v. United Technologies Corp.*, 835 F.2d 109, 114 n.7 (5th Cir. 1988) ........................ 9

*FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990) ....................................................................... 10

*Kastner v. Texas Bd. of Law Examiners*, 278 Fed. Appx. 346, 348-49, 2008 U.S. App. LEXIS 10416 (5th Cir. 2008) ................................................................................................................. 10

*Love v. Law School Admission Council, Inc.*, 513 F. Supp. 2d 206, 216 n.7 (E.D. Pa. 2007) ... 3, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) .............................................................. 9

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ....................................................... 9

*Murray v. Educational Testing Service,* 170 F.3d 514, 517 (5th Cir. 1999) .................................. 5

*Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004) ............................. 7

*United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000) ............................................... 9

**Other Authorities**

15 Moore's Fed. Prac. § 101. 70[2] (3d ed. 1997) .......................................................................... 9

42 U.S.C. § 12102(1)(A) .................................................................................................................. 3

42 U.S.C. § 12189 ............................................................................................................................ 2

A. Harrison, "Adults Faking ADHD: You Must Be Kidding!," *ADHD Report*, Vol. 14, No. 4, 1, 3 (2006) ......................................................................................................................................... 5

American Psychiatric Association's Diagnostic and Statistical Manual, Fourth Edition ............... 4

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* .............................. 1, 2, 3, 6

B. Sullivan, K. May & L. Galbally, "Symptom Exaggeration by College Adults in Attention-Deficit Hyperactivity Disorder and Learning Disorder Assessments," *Applied Neuropsychology*, Vol. 14, No. 3, 189 (2007) .......................................................................... 5

M. Gordon, L. Lewandowski & S. Keiser, "The LD Label for Relatively Well-Functioning Students," *J. Learning Disabilities*, Vol. 32, No. 6, 485, 488 (1999) .......................................... 4

Rule 12(b)(1) of the Federal Rules of Civil Procedure ............................................................... 1, 9

S.E. Phillips, "High Stakes Testing Accommodations:  Validity Versus Disabled Rights," *Applied Measurement in Education*, 7(2), 93-120 at 98 (1994) .................................................. 6

*Standards for Educational and Psychological Testing*, at 61 (1999) ............................................ 6

U.S. CONST. art. III, § 2 ................................................................................................... 9, 10

MAY IT PLEASE THE COURT:

Plaintiff Michael Steven Kober has filed a "Complaint for Emergency Injunctive Relief" which asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. However, as shown below, Mr. Kober's claims are premature. The action that he is challenging has not yet occurred, and may never occur.

Defendant National Board of Medical Examiners ("NBME") develops and administers the United States Medical Licensing Examination ("USMLE"). The USMLE is a standardized test that is used as part of the process for licensing physicians in Louisiana and in every other jurisdiction in the United States. The complaint asserts that NBME violated plaintiff's rights under the ADA by denying him testing accommodations on the USMLE. However, plaintiff is not currently registered to take the USMLE and has no accommodation request pending with the NBME. His claims are not ripe, and there is no case or controversy for the Court to resolve. The Court therefore lacks subject matter jurisdiction, and his complaint should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## INTRODUCTION

### I. NBME And The United States Medical Licensing Examination

NBME is a not-for-profit organization whose mission is to help protect the public through state-of-the-art assessment of the knowledge and skills of prospective health professionals. Declaration of Catherine Farmer ("Farmer Decl.") at ¶ 3 (Ex. A hereto). Together with the Federation of State Medical Boards of the United States, another non-profit organization, NBME has established the USMLE program. *Id.* at ¶ 2.

The USMLE is used in evaluating applicants' competence for medical licensure in the United States. The USMLE is designed to assess a physician's ability to apply knowledge, concepts, and principles -- and to demonstrate fundamental patient-centered skills -- that

constitute the basis of safe and effective patient care.  *Id.*  State medical boards rely upon the successful completion of the USMLE exams as an important component of their process for licensing physicians to practice medicine in their states.  *Id.*

The USMLE has three components, or "Steps."  *Id.* ¶ 4.  The USMLE Step 1 examination is the exam that is relevant in this case.  The Step 1 examination consists of approximately 350 multiple-choice questions which assess whether the examinee understands and can apply important concepts of the sciences basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.  *Id.*  It is a standardized test.  *Id.*  In order to protect the reliability and comparability of the resulting scores, there is a "standard" set of test administration conditions, such as the amount of testing time that examinees receive, the number of breaks, and other core testing conditions.

## II.      Mr. Kober And His Alleged Disability

Mr. Kober attends a medical school located in the Caribbean Islands.  Complaint ¶ 1.  He claims to have been "diagnosed with a learning disability" when he was nineteen.  *Id.* ¶¶ 2, 8.  More specifically, Mr. Kober claims to have "Attention-Deficit Hyperactivity Disorder, Anxiety Disorder and Dyslexia."  *Id.* ¶ 8.  He alleges that, under the ADA, these disabilities entitle him to additional testing time and other accommodations when he takes the Step 1 exam.  *Id.* ¶ 1.

## III.     The ADA's Applicability To Testing Organizations

Under Title III of the ADA, any private entity "that offers examinations … related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations ... in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.  This provision applies with respect to the USMLE.

The ADA applies to individuals with a covered "disability." Insofar as relevant here, "disability" is defined as having "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Thus, having a diagnosed impairment is not the same thing as being "disabled" within the meaning of the ADA.

Many individuals who take standardized exams request testing accommodations under the ADA. Relatively speaking, accommodation requests involving physical impairments have not been difficult to evaluate or particularly controversial. But most testing accommodation requests are not based upon physical impairments. Instead, as is the case here, they are based upon mental impairments, such as Attention Deficit/Hyperactivity Disorder ("ADHD") and learning disabilities ("LDs"). In most cases, it is far more complicated to confirm the existence of such impairments and to evaluate the resulting functional limitations than it is when dealing with physical impairments. It is also more difficult to determine whether the requested accommodations are reasonable and appropriate.

The accommodations requested on standardized examinations for mental impairments include extended testing time, readers, scribes, calculators, additional rest periods, separate testing rooms, and modification of the exam format. Additional testing time, however, is by far the most frequently requested accommodation. It is also a benefit that almost every examinee -- with or without disability -- would like to have, in the belief that it will assist him or her to attain a higher score. *See Love v. Law School Admission Council, Inc.*, 513 F. Supp. 2d 206, 216 n.7 (E.D. Pa. 2007) ("the research indicates that if you give someone extra testing time on a timed test like the GMAT or the LSAT, their score will improve whether they have a learning disability or not").

The number of individuals requesting accommodations based upon a diagnosis of LDs and/or ADHD has increased dramatically over the past 20 years. These requests raise complex

issues at many levels.  First, the requests often involve, in some way, the very cognitive skills that a standardized exam is attempting to measure.  Second, the provision of such accommodations -- especially extra testing time -- can affect the comparability of the resulting scores and scores achieved under standard testing conditions.  Third, these requests are based upon diagnoses that are often poorly documented and as to which considerable room for professional disagreement is possible.

Perhaps as a result of problems with the diagnostic models, "[d]iagnosticians are now routinely identifying learning disabilities in postsecondary students who never encountered meaningful impairment during high school or, in many cases, even college," even though LDs are lifelong conditions that should become manifest in childhood.  M. Gordon, L. Lewandowski & S. Keiser, "The LD Label for Relatively Well-Functioning Students," *J. Learning Disabilities*, Vol. 32, No. 6, 485, 488 (1999).  The functional limitations associated with ADHD likewise should become evident in childhood, but many ADHD diagnoses also arise for the first time when someone is requesting accommodations on a standardized test or in college.  These diagnoses often rely heavily upon self-reporting by the prospective examinee of his or her symptoms, but, as one court recently noted, there can be "problems with relying on self-reporting to make an assessment."  *Love v. Law School Admission Council*, 513 F. Supp. at 220; *see also Baer v. Nat'l Bd. of Medical Examiners,* 392 F. Supp. 2d 42, 46 (D. Mass. 2005) ("At this stage, it seems the ADHD diagnosis is suspect:  It has surfaced only very late in the series of evaluations of the plaintiff occurring over many years, and it is not made in conformity with the generally accepted standards of the American Psychiatric Association's Diagnostic and Statistical Manual, Fourth Edition ('DSM-IV').").

The risk of misdiagnoses resulting from flaws in the diagnostic models and from incomplete or inadequate professional evaluation is compounded by the fact that some

- 4 -

individuals have been found to exaggerate their symptoms in order to obtain the "considerable secondary gain potentials" that often come with the diagnosis, including "academic accommodations (*e.g.*, extended test time, private testing environments, alternative courses) and other forms of assistance...."[1]

When examinees request accommodations, they are asking to take an exam under conditions that are different from the conditions under which all other examinees must test. This has important implications. Research has shown that scores from nonstandard administrations often do not have the same meaning as scores from a standard administration. Accommodations can thus undermine the very purpose of a "standardized" examination. This raises fairness issues for individuals who test without accommodations, and for the many entities that rely upon test scores as reliable indicators of an individual's achievement, competency, or aptitude. *See, e.g.*, *Murray v. Educational Testing Service,* 170 F.3d 514, 517 (5th Cir. 1999) ("ETS provides a valuable service to colleges and universities by providing a standardized measure of students' ability. Accordingly, ETS has an obligation to provide, or use its best efforts to provide, only valid scores to the colleges and universities that rely on ETS's services. Moreover, ETS has a right to protect its own reputation by assuring the reliability of the information it provides. Finally, 'the other test-takers are entitled to assurance that no examinee enjoys an unfair advantage in scoring.'") (citations omitted).

In this regard, it is helpful to understand what it means to say that a test is "standardized," and why it matters if a given examinee asks to have such a test administered under non-standard

---

[1] B. Sullivan, K. May & L. Galbally, "Symptom Exaggeration by College Adults in Attention-Deficit Hyperactivity Disorder and Learning Disorder Assessments," *Applied Neuropsychology*, Vol. 14, No. 3, 189 (2007) (examining LD and ADHD diagnoses for students at a mid-size college over a four-year period, and concluding that "significant numbers of college students demonstrate poor effort in the context of ADHD and LD evaluations, and that such poor effort is an indication of symptom magnification motivated by secondary gain potentials"); s*ee also* A. Harrison, "Adults Faking ADHD: You Must Be Kidding!," *ADHD Report*, Vol. 14, No. 4, 1, 3 (2006) ("Recent studies demonstrate that it is very easy to fake symptoms of ADHD").

conditions:

> When directions to examinees, testing conditions, and scoring procedures follow the same detailed procedures, the test is said to be standardized. Without such standardization, the accuracy and comparability of score interpretations would be reduced. For tests designed to assess the examinee's knowledge, skills, or abilities, standardization helps to ensure that all examinees have the same opportunity to demonstrate their competencies.

*Standards for Educational and Psychological Testing*, at 61 (1999) (published by the American Educational Research Association, the American Psychological Association, and the National Council on Measurement in Education). From a testing perspective, accommodations raise concerns that scores from non-standard administrations may not have the same meaning as scores from standard administrations. "Comparability of scores may be compromised, and the test may … not measure the same constructs for all test takers." *Standards for Testing* at 61. Extra testing time is the accommodation of greatest concern to testing organizations because of its impact on the resulting scores. Research involving various standardized exams has shown that scores achieved with extra testing time are not comparable to scores achieved under standard time conditions.

In the context of licensure and certification tests, the inappropriate provision of extra testing time or other accommodations could also affect the general public. "Diploma tests and licensure tests are designed to protect the public from those who have not mastered minimum skills." S.E. Phillips, "High Stakes Testing Accommodations: Validity Versus Disabled Rights," *Applied Measurement in Education*, 7(2), 93-120 at 98 (1994). When it comes to a licensing exam for physicians, the public welfare is obviously affected if someone passes an exam because of an inappropriate alteration of the standard exam conditions.

NBME provides reasonable and appropriate accommodations for individuals with documented disabilities, in accordance with the ADA. However, it is important for

accommodation requests to be granted only when they are adequately supported. *See generally Powell v. Nat'l Bd. of Medical Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004) (noting that NBME's test accommodation "procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it."). Licensing authorities throughout the nation depend upon the reliability and integrity of USMLE scores. NBME therefore reviews requests for accommodations on the USMLE in a conscientious, but fair, manner. It routinely calls upon independent external reviewers with relevant expertise to assist in this review process, once the supporting documentation is complete and the file is ready for a decision. *See* Farmer Decl. ¶ 5.

### IV.   Mr. Kober's Requests For Testing Accommodations

Mr. Kober alleges in his complaint that he "is planning to take the [USMLE] Step 1," and that the "NBME has illegally refused and is illegally refusing to accommodate Kober's learning disability by refusing Kober additional time to take the USMLE Step 1." Complaint at ¶ 1. These allegations are misleading at best. While Mr. Kober might be "planning to take" the USMLE Step 1 exam, he is not currently registered to do so, and he has no pending request for accommodations on the Step 1 exam.

Mr. Kober has requested accommodations previously, but he has never had a request for accommodations denied on its merits by NBME. He first requested accommodations on the Step 1 exam in June 2008. Farmer Decl. ¶ 7. NBME informed him that it needed additional information to evaluate his request. *Id.* at ¶ 8; *accord*, Complaint ¶ 18. Rather than provide any

of the additional information, Mr. Kober withdrew his request for test accommodations. Farmer Decl. ¶ 9. He subsequently elected to take the Step 1 exam three times without test accommodations. *Id.* ¶ 10. He did not obtain a passing score on any of these three attempts (August 2008, December 2009 and March 2009). *Id.*

In April 2009, Mr. Kober again registered to take the Step 1 exam. He was given a three-month eligibility period for testing of June 1 through August 31, 2009. *Id.* ¶ 11. On June 3, 2009, NBME received a cover letter and various documents from Mr. Kober in support of a renewed request for testing accommodations. *Id.* ¶ 13. In a letter dated June 24, 2009, NBME informed Mr. Kober that the documentation he submitted was insufficient for NBME to make an informed decision on his request, and NBME again encouraged him to provide additional documentation that might support his request. *Id.* ¶ 14.

Mr. Kober did not provide any supplemental documentation. Instead, his counsel, Vincent Nowak, sent a letter asking NBME to "reconsider" its decision. *Id.* ¶ 15. NBME responded promptly in a letter dated July 30, 2009. NBME informed Mr. Nowak that no final decision had been made by NBME on Mr. Kober's accommodation request, that NBME was awaiting a response from Mr. Kober to NBME's June 24, 2009 letter. *Id.* NBME requested that Mr. Kober either submit the additional information that NBME had requested or let NBME know that no additional information was forthcoming, so that NBME could make a final decision on his request. *Id.*

NBME did not receive a response to its July 30th letter, from Mr. Kober or from Mr. Nowak. *Id.* ¶ 16. Accordingly, NBME never submitted Mr. Kober's request to an independent external reviewer, as it routinely does when a file is ready for review, *id.* ¶ 5, and it never made a final decision on Mr. Kober's June 2009 request for testing accommodations. Mr. Kober's three-month registration period to take the Step 1 exam expired on August 31, 2009, and he has not re-

registered. *Id.* ¶ 17. As a result, he is not currently registered to take the exam and has no accommodation request pending with the NBME. *Id.*

## ARGUMENT

### I. Applicable Legal Standard Under Rule 12(b)(1)

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And because subject matter jurisdiction focuses on the court's power to hear a claim, courts must give the plaintiff's factual allegations close scrutiny when resolving a Rule 12(b)(1) motion. In performing this review, the court is not limited to the allegations in the complaint and may consider materials outside the pleadings, including declarations. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Carmichael v. United Technologies Corp.*, 835 F.2d 109, 114 n.7 (5th Cir. 1988).

### II. The Court Lacks Subject Matter Jurisdiction To Decide Mr. Kober's Premature Claims

Article III of the United States Constitution confines the jurisdiction of federal courts to "cases" and "controversies." U.S. CONST. art. III, § 2. To give meaning to the "case or controversy" requirement, federal courts have developed various justiciability doctrines, one of which is the ripeness doctrine. *See United Transp. Union v. Foster,* 205 F.3d 851, 857 (5th Cir. 2000). If a case is not ripe, a court lacks subject matter jurisdiction.

The ripeness doctrine asks "whether the case has been brought at a point so early that it is not yet clear whether a real dispute … exists between the parties." 15 Moore's Fed. Prac. § 101.70[2] (3d ed. 1997). "Ripeness separates those matters that are premature because the injury is speculative any may never occur from those that are appropriate for judicial review." *United Trans. Union,* 205 F.3d at 857. If a claim rests upon future events that may not occur as

anticipated, or may not occur at all, it is not ripe for adjudication. *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 108-09 (2d. Cir. 1998).

A plaintiff bears the burden of establishing ripeness under Article III. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990). As shown above, Mr. Kober cannot satisfy that burden here. NBME never made a decision on his prior accommodation requests, his most recent registration to take the USMLE Step 1 exam has expired and he is not currently registered to take the exam (with or without accommodations), and he has no accommodation request pending with the NBME. *See generally* Farmer Decl. at ¶¶ 7-17 (Ex. A hereto). His ADA claims are therefore premature and should be dismissed. *See, e.g., Kastner v. Texas Bd. of Law Examiners*, 278 Fed. Appx. 346, 348-49, 2008 U.S. App. LEXIS 10416 (5th Cir. 2008) (affirming dismissal of claims asserted by bar applicant: "[T]he hearing scheduled by the [Board of Law Examiners] has not been conducted and the BLE has not yet made a final determination as to his application for admission. Because Kastner has not yet been denied admission to the bar, his claims are merely hypothetical, and our review is barred by the ripeness doctrine."); *Blanks v. Register*, 493 F.2d 697, 699-700 (4th Cir. 1974) (affirming dismissal of a job applicant's discrimination claim, where the claim was asserted before the defendant Board "had acted in making any appointment…. The case was premature and therefore not ripe for determination.").

## **CONCLUSION**

Plaintiff's complaint should be dismissed.  The dismissal should be without prejudice, so that Mr. Kober may re-file his complaint if and when there is actually a decision by NBME on an accommodation request by plaintiff that can be subject to judicial review.

>COOK, YANCEY, KING & GALLOWAY
>A Professional Law Corporation
>
>
>By: s/John T. Kalmbach
>    John T. Kalmbach  #24484
>
>333 Texas Street, Suite 1700
>P. O. Box 22260
>Shreveport, LA 71120-2260
>Telephone:  (318) 221-6277
>Telecopier: (318) 227-7850
>herschel.richard@cookyancey.com
>john.kalmbach@cookyancey.com
>
>ATTORNEYS FOR NATIONAL BOARD OF
>MEDICAL EXAMINERS

- 12 -

## **CERTIFICATE**

I HEREBY CERTIFY that a copy of the above and foregoing was filed with the United States District Court for the Western District of Louisiana by electronic case filing/case management and that a copy of the same was either served on all counsel of record by electronic notification or by U.S. Mail, postage pre-paid.

Shreveport, Louisiana, this 13th day of November, 2009.

                                                        s/John T. Kalmbach
                                                             OF COUNSEL