**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **MICHAEL STEVEN KOBER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| | § | **Civil Action No. 09-1772** |
| **v.** | § | |
| | § | |
| **NATIONAL BOARD OF MEDICAL** | § | |
| **EXAMINERS,** | § | |
| | § | |
| **Defendant.** | § | |

<u>**Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support**</u>

**To the Honorable Judge:**

     Plaintiff, Michael Steven Kober ("Kober"), files his Response to Defendant, National Board of Medical Examiners' ("NBME") Motion to Dismiss, and respectfully states the following:

## Table of Contents

Introduction ...................................................................................................................... 4

Background ...................................................................................................................... 4

a)      Kober's History of Coping and Accommodation with Learning Disabilities ....................5

b)      Kober's Denial of Accommodation by USMLE ................................................................7

Discussion ...................................................................................................................... 9

a)      Kober's Claim is Ripe Because he has Been Effectively Denied Accommodation
        for his Disabilities ..........................................................................................................11

b)      Even if Kober has not been Formally Denied Accommodation, his Claims are still
        Ripe ...............................................................................................................................12

Conclusion ...................................................................................................................... 15

Certificate of Service ...................................................................................................... 17

# Table of Authorities

## Cases

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967)..................................................... 13

*Adler v. Board of Education of the City of New York*, 342 U.S. 485, 488 n.4 (1952) ................ 14

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992) ..................................................... 10

*Ctr. & S.W. Servs. v. EPA*, 220 F.3d 683 (5th Cir. 2000) .............................................. 15

*Employers Ass'n, Inc. v. United Steelworkers of America*, 32 F.3d 1297 (8th Cir. 1994)........... 13

*Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192 (5th Cir. 2000) ................ 11

*Home Builders Assn'n v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998)....................... 10

*Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498 (1972)............................................... 10

*Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ................................... 10

*Minnesota Public Interest Research Group* v. *Selective Service System*, 557 F. Supp. 925 (D. Minn. 1983); *reversed on other grounds*, 468 U.S. 841 (1984) ............................... 14

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583 (5th Cir. 1987) 15

*Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir. 1996) .......................... 1, 10

*Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n*, 461 U.S. 190 (1983).......................................................................................... 13

*Paterson v. Weinberger*, 644 F.2d 521 5th Cir. 1998)................................................... 10

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ...................................................... 13

*Texas v. United States*, 497 F.3d 491 (5th Cir. 2007)................................................. 15

*Truth v. Kent School Dist.*, 542 F.3d 634 9th Cir. 2008).............................................. 12

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ................................................. 10

## Statutes

42 U.S.C. §12101............................................................................................ 5

## Rules

Federal Rules of Civil Procedure 12(b)(1)......................................................... 9, 10

## Introduction

1.      Kober is suing the NBME for ADA accommodations on the United States Medical Licensing Examinations.

2.      NBME is moving the Court to dismiss Kober's action claiming that it is not "ripe" for adjudication.  In support, NBME points to the fact that it has not yet made a "final" decision.  However, despite numerous requests for accommodations, and despite a mountain of clinical evidence, NBME refuses to make a "final" decision.  It is specious to claim that the matter is not "ripe" because NBME refuses to make a "final" decision.  Taking this argument to its logical end, NBME could refuse to make "final" decisions in all requests for accommodations, thereby completely avoiding the clear mandate of the ADA, and NBME's ADA obligations.

3.      NBME's argument is as clever as it is transparent.  NBME cannot unilaterally divest an Article III court of jurisdiction, nor can it deny Kober's ADA rights, by simply sitting on its hands and refusing to make a decision.  Such tactics are an affront to this Court's jurisdiction and completely frustrate the purpose of the ADA.  The motion to dismiss should be denied.

## Background[1]

4.      Kober brought this action for emergency, preliminary and permanent injunctive relief based on NBME's refusal to provide reasonable accommodations to Kober pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*.  The NBME has illegally refused and is illegally refusing to accommodate Kober's learning disability in connection with their U. S. Medical Licensing Examination ("USMLE") Step 1 exam.

---

[1] The factual allegations set forth herein  derive from Kober's Original Complaint.

**Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support**                    **Page 4**

5.     Kober is a medical student at the American University of the Caribbean School of Medicine ("AUCSM"), where he has completed his second year of instruction.  As part of his preparation for the third year of medical school, Kober is required to take the USMLE Step 1 Exam.  Kober is not permitted to advance beyond his second year of medical school until he has passed this exam.  Kober has taken this exam on three separate occasions but has been unable to complete the exam in the time allowed.  In fact, of the 336 questions on the test, as many as 50 were left unanswered because Kober did not have enough time to finish the exam.  Despite this fact, Kober came very close to passing the exam.

6.     Because of his learning disabilities, Kober has requested that USMLE provide him with additional time to take the exam.  These requests have been denied.  As a result, Kober has been forced to take a leave of absence from AUCSM.

a)     **Kober's History of Coping and Accommodation with Learning Disabilities**

7.     Although not clinically diagnosed until Kober was nineteen, evidence of these learning disabilities has been manifested throughout Kober's academic studies, beginning when Kober was in kindergarten.  From kindergarten through third grade, Kober attended a small private school where he struggled academically.  Kober was constantly reprimanded for his daydreaming and inattentiveness.  While he was in the third grade, Kober took the SRA Survey of Basic Skills that compares a child's academic progress in various subject matters with that of other children throughout the country.  Kober's scores ranked him in the 27th percentile nationally for reading and in the 39th percentile for language, meaning that 73% and 61% of the students taking the test outperformed Kober.

8.     While in grade school, Kober was tested for placement into a into a Special Education Program.  In other words, the school was testing for low intelligence, not learning

disabilities.  Not surprisingly, when the assessment was finished, Kober was not recommended for placement into a Special Education Program.  The observations made during the assessment were telling.  For instance, it was noted that Kober was inattentive and often daydreamed.  His grades in reading and language were mostly C's and D's.  It was noted that his parents reported that Kober knew the material when he was at home, but could not reproduce the same results on a written test.  It was also noted that Kober was easily distracted and that his attention was not on his assignments.  Moreover, even though Kober was not placed into the Special Education Program, it was recommended that special concessions be allowed for him in the areas of spelling and written expression.

9.      After high school, Kober continued his studies at Louisiana State University ("LSU").  Once at college, and faced with the large lecture setting, Kober's learning disabilities manifested themselves again.  He had a difficult time keeping focus and paying attention during the long lectures.  Puzzled by the continuing problems at LSU, the Kober family sought the assistance of a clinical psychologist.

10.     Kober was evaluated by David S. Post, Ph.D. for complications related to his academic stresses.  This occurred during Kober's second year at LSU.  The battery of tests Dr. Post administered is set forth in his attached Consult Note dated March 13, 2000.  Kober's Achievement scores revealed no problems with Broad Reading and Broad Math, and only mild problems with Broad Written Language.  His cognitive abilities scores revealed no problems with Auditory Processing or Visual Processing.  Kober's CPT scores, however, demonstrated significant problems with several aspects of attention, including the inability to sustain attention, impulsive responding and difficulty inhibiting responses, and impaired arousal levels.  Based on these tests, Dr. Post concluded that Kober suffered from Attention-Deficit Disorder, Inattentive

Type and Anxiety Disorder NOS.  Dr. Post placed Kober on medications and recommended that Kober receive academic accommodations at LSU for his attention disorder.  As a result of Kober's documented learning disabilities, LSU granted Kober the following accommodations: time and a half on in class assignments and exams; and a distraction reduced environment

11.     Kober was treated for ADHD by Dr. Kaufman, a neurologist from Baton Rouge. Once Kober was diagnosed and placed on medication, and once he received the accommodations from LSU, Kober's GPA improved from 2.6 to 3.7.  It was around this time that Kober began preparing for the MCAT Exam so that he could go to medical school.  Both Dr. Post and Dr. Kaufman recommended that Kober receive accommodations when taking the MCAT Exam.  Dr. Post specifically recommended that Kober receive twice the standard time and that he take the test in a separate room.  These accommodations were granted.

12.     Following his undergraduate studies, Kober sought admission at the American University of the Caribbean School of Medicine ("AUCSM"), where he has successfully completed his second year and anticipates commencing his third year following the Step 1 Exam. Throughout his two years of medical school, Kober requested and was granted accommodations when taking exams.  Specifically, he was granted additional time to complete tests.

**b)     Kober's Denial of Accommodation by USMLE**

13.     In 2008, after completing his second year of medical school, Kober prepared to take the Step 1 Exam administered by NBME.  In anticipation of the Step 1 Exam., Kober wrote to the NBME requesting additional time to take the exam.  In support of his request, Kober advised NBME that he was given formal accommodations of extra time on exams by (1) Louisiana State University; (2) the Association of American Medical Colleges (the not-for-profit organization that administers the MCAT); and (3) the American University of the Caribbean

School of Medicine.  Kober also advised NBME that he had been diagnosed with ADHD, an anxiety disorder and dyslexia.  Kober also enclosed two reports from Dr. Post dated March 13, 2000 and August 27, 2003.  Likewise, Kober enclosed a report from Dr. P. Keith Nabours, a licensed psychiatrist.

14.     On July 16, 2008, NBME wrote to Kober and advised him that the information he had submitted was incomplete and asked him to submit documentation demonstrating that he is substantially limited in one or more major life activities.  Kober was also instructed to submit documentation proving the extent to which he meets the diagnostic criteria of DSM-IV-TR. Lastly, Kober was told to submit "objective records to document the chronic course and current impact of your reported difficulties, such as college, medical school, and other post-secondary records and transcripts and all scores for nationally standardized tests taken."

15.     Because of NBME's resistance, Kober took the Step 1 Exam in both July 2008 and February 2009.  Kober was unable to complete either exam in the time allowed.  In fact, of the 336 questions on the test, as many as 50 were left unanswered because Kober did not have enough time to finish the exam.  Despite this fact, Kober came very close to passing both exams.

16.     In 2009, Kober submitted his second request for the accommodation of additional time on the Step 1 Exam.  As before, the NBME requested that Kober supply it with additional information.  Kober did so on May 27, 2009 by providing the NBME with a report from Dr. Patricia Post, a clinical psychologist.   This report states that a diagnostic interview and evaluation of Kober took place over two days in May 2009.  The test administered was the Nelson-Denny Reading test.  His test scores on this test reflect poor performance in reading (2nd percentile), vocabulary (4th percentile) and comprehension (2nd percentile).  Overall, Kober placed in the second percentile, meaning that 98% of those taking the test did better than Kober.

This part of the Nelson-Denny test is a timed test.  On vocabulary, he was only able to complete 42 of the 80 questions; on reading comprehension, he was only able to complete 18 of the 38 questions.  In the untimed Gray Oral Reading Test, Kober fared much better, ranking in the 37th percentile.  The results from this test were also given to the NBME.  This material was in addition to the material supplied to the NBME in 2008, material that included the reports from Dr. David Post and Dr. Nabours.  As with the other reports, the report of Dr. Patricia Post noted that Kober suffered from ADHD and dyslexia.  She concluded that Kober was qualified for accommodations and should receive double time when taking timed tests.

17.     On June 24, 2009, NBME again denied Kober the accommodation of extra time, claiming that the information Kober submitted was incomplete.  Similar to before, the NBME stated that accommodations are only available to individuals who are 'substantially limited in a major life activity.  The NBME made this decision without ever having met, tested or evaluated Kober.  Based on recent changes to the ADA, Kober requested that the NBME reconsider its decision.  In a letter dated July 30, 2009, the NBME stated that it would do so.  Thus far, there has not been any word from the NBME that it will in fact accommodate Kober because of his documented learning disabilities.

## Discussion

18.     The NBME moves that this Court dismiss Kober's claims due to lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1).  (Memorandum in Support of Defendant's Motion to Dismiss, pg. 9).  A motion under Rule 12(b)(1) should be granted only if it appears that the Plaintiff cannot prove any set of facts in support of its claim. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to

adjudicate the case." *Home Builders Assn'n v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).

19.    Here, the Defendant complains that the case is not ripe, thus, the Court lacks jurisdiction to hear it.  When questioning a cause of action for ripeness, "basically, the question in each case is whether … there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality."  *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972); *quoting Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

20.    A motion to dismiss under Rule 12(b)(1) based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998) ("If sufficient, those allegations alone provide jurisdiction.")  When the defendant supports the motion with evidence, then the attack is "factual" and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  Although NBME has submitted an appendix supplementing their brief, it did so without raising any disputed material facts.  Rather, the contents of their appendix are merely a recitation of the correspondence NBME has had with Kober, and copies of that correspondence. As their evidentiary materials fail to give rise to any disputed facts, this Court should decide this motion based on whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction.

a)   **Kober's Claim is Ripe Because he has Been Effectively Denied Accommodation for his Disabilities**

21.    As of the time this of this brief's filing, NMBE has denied any accommodation to Kober for his disabilities.   NMBE pretends this is not the case; instead, they argue that because he has not been formally denied accommodation, this case may not proceed.   NMBE's contention is neither consistent with Fifth Circuit precedent nor is it factually sound.

22.    NMBE did actually deny Kober accommodation for his disabilities.  In their June 24, 2009 letter, they state that "If we do not receiver any additional documentation from you … your request for accommodations will be cancelled." (Defendant's Exhibit B, pg. 2).  As Kober did not provide any further documentation as requested by the NMBE, he has been denied accommodation for his disabilities under the terms of their letter.

23.    Further, Kober has repeatedly requested accommodation, and no accommodation has been given.   A defendant may not simply postpone action to indefinitely in order to perpetually delay ripeness.  The Fifth Circuit stated as much in *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*.  *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000).  There, the Court looked at a case where a Louisiana Parish had not provided a zoning accommodation for a group home designed for the benefit of Alzheimer's patients.  Rather than denying the zoning accommodation outright, the Parish did not act on the zoning request for a period of ninety-five days prior to the filing of a law suit.  *Id.* at 200.  The Court, in analyzing the lack of a formal denial, decided that "denial can be both actual or constructive, as an indeterminate delay has the same effect as an outright denial." *Id.* at 199.

24.    The *Groome* Court focused on two factors ― whether there was immediate injury from the delay, and whether the delay would constitute a continued hardship.  The Court noted that "housing discrimination causes a uniquely immediate injury," and that further delay would

cause the Plaintiff to "be liable for a $2000 penalty." *Id*. at 200. The Court then concluded that "while never formally denying the request, the Parish's unjustified and indeterminate delay had the same effect." *Id*. at 199-200.  Thus the lack of an outright denial is unnecessary when the defendant has delayed making a decision.

25.     Moreover, the same reasoning is equally applicable here.  NBME claims that it has not made a final decision on the merits of Kober's request.  However, their "indeterminate delay" is simply an effective denial.  Kober has been forced to take a leave of absence from medical school, constituting an immediate injury.  Further, the inability to continue his medical studies is an ongoing setback in Kober's education.

26.     Kober complains of discrete events that have already occurred.  *Truth v. Kent School Dist.*, 542 F.3d 634, 643 (9th Cir. 2008) (A case was ripe where school waited sixteen months to determine whether a Bible club could meet on campus, even though there was no final decision).  It is entirely inaccurate to state that the harm Kober has complained of "rests upon future events" or events that "may not occur as anticipated."  (Memorandum in Support of Defendant's Motion to Dismiss, pgs. 9-10).  Kober's injury has taken place.  He has requested accommodation, which has not been given.   Thus, it is clear that his claim has been denied, regardless of NBME's "official" position.

> **b)     Even if Kober has not been Formally Denied Accommodation, his Claims are still Ripe**

27.     Even if Kober has not been formally denied accommodation, formal denial of a request is not necessary to make Kober's claim ripe.  NBME states that this Court must dismiss the claims as unripe because the claim "may not occur as anticipated, or may not occur at all." (Defendant's Motion to Dismiss, pg. 10).  This is a misleading statement of law.

28.     Ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration."  *Pacific Gas and Elec. Co. v. State Energy Resources Conservation & Development Com'n*, 461 U.S. 190, 201 (1983).   The Supreme Court has stated that in deciding whether a case is ripe it looks primarily to two considerations: "the hardship to the parties of withholding court consideration" and "the fitness of the issues for judicial decision."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). In *Abbott Laboratories*, the Court explained that the "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Id* at 148.

29.     The prospect or fear of future events may have a real impact on present affairs. The classic example is provided by *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).  In the *Society of Sisters* case, private schools were allowed to attack a statute that would require all students to attend public school at a future date, because of the immediate effect in shifting students to public schools.  This original holding has lead to further cases where, <u>even where a body has not made final decision</u>, a Court may rule on the merits of a case.

30.     A clear demonstration of the prospect of future events presenting an effect on present affairs supported the finding of ripeness in *Employers Ass'n, Inc. v. United Steelworkers of America*, 32 F.3d 1297, 1299–1300 (8th Cir. 1994). An association of employers challenged a state statute making it an unfair labor practice to hire permanent replacements for striking workers.   The union they bargained with had not yet called a strike against any member employer.   The mere existence of the statute, however, "permanently and substantially shifts the terms of bargaining in favor of the union, even in situations where the possibility of a strike appears remote."

<u>Plaintiff's Response to Defendants' Motion to Dismiss and Brief in Support</u>                     **Page 13**

31.     Similarly, students who had not registered under selective service requirements presented a ripe challenge to a federal statute denying student financial assistance to those who have not registered, even though they had not been denied. *Minnesota Public Interest Research Group* v. *Selective Service System*, 557 F. Supp. 925 (D. Minn. 1983); *reversed on other grounds*, 468 U.S. 841 (1984).   The court reasoned that irreparable harm might result if a decision were postponed.  "Many students may forgo financial assistance to avoid self-incrimination. Others may waive their privilege against self-incrimination by beginning the aid application process. 'Ripeness may be found even though the plaintiff controls the happening of the contingent events whose occurrence would solidify the dispute.'" *Id* at 929.

32.     There is no set formula for a court to review actions that have not resulted in a final decision.  However, a number of cases are instructive.  In the case of *Adler v. Board of Education of the City of New York*, the Court implicitly found ripe a challenge to a state law designed to eliminate "subversive persons from the public school system."  342 U.S. 485, 488 n.4 (1952) (The ripeness issue was clearly raised, as it was a key element in Justice Frankfurter's dissent).  The state statute contained a list of subversive organizations, and membership in any of these groups was deemed a basis for disqualification from being employed in any school.  The Court's choice to decide the case apparently reflected a conclusion that there was a substantial hardship to denying review in that teachers had to either refrain from joining these organizations or risk loss of their jobs.  Thus, it is well established that a case is ripe because of substantial hardship when a person must forego a lawful activity.

33.     These principles provide guidance in the present case.  Ultimately, "[a] case is generally ripe if any remaining questions are purely legal ones." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). This does not mean that the

absence of questions of fact create a ripe case or controversy.  "Even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness." *Ctr. & S.W. Servs. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). In this sense, the doctrines of ripeness and standing "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007).

34.     Kober has suffered a concrete injury.  He has submitted all of the materials he has at his disposal to the Defendant.   His injury is clear — he has not been allowed any accommodation when taking his Step 1 exam.  This injury has prevented him from continuing on with his medical school studies.  Further, his injuries are essentially legal questions.  Kober must show, as a matter of law, that he is entitled to accommodation under the ADA.   This is unambiguously the case before the Court.

35.     The fact that the NBME argues that it has not officially made a final decision is irrelevant.  First, the NBME has made such a decision, whether it chooses to call it a final decision or not.  Second, a final decision by the NBME is entirely unnecessary to give rise to standing.  Numerous cases, as cited above, show that a final decision is not the *sine qua non* of ripeness.  Rather, the standard is whether the parties have an actual injury and whether the issue is fit for a judicial decision.  This case meets both of those factors.

### Conclusion

This Court has jurisdiction because NBME's denial to Kober of his ADA rights is a justiciable controversy.  The motion to dismiss should be denied.


Dated: November 25, 2009.

{2705\00\00121539.DOC / 1}

Respectfully submitted,

KITCHENS, BENTON, KITCHENS & BLACK

By:  /s/ Clinton C. Black

Clinton C. Black (TA)
Bar roll #26604
2122 Airline Drive, Suite 200
Bossier City, Louisiana 71111
Telephone:  318-747-9636
Facsimile:   318-747-7679

Robert R. Bell, SBOT# 00787062
Vincent E. Nowak, SBOT# 15121550
MULLIN HOARD & BROWN, LLP
500 S. Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas  79120-1656
806.372.5050
806.371.6230 (Fax)

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on November 25, 2009, a copy of the above and foregoing was filed with the United States District Court for the Western District of Louisiana by electronic case filing/case management and that a copy of the same was served on all counsel of record by electronic notification.

By:  /s/ Clinton C. Black_____